UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| CINDY LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 13-032-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Cindy Lawrence ("Lawrence" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 10, 11] Lawrence argues that the administrative law judge ("ALJ") assigned to her case erred because the decision contains the signature of an ALJ other than the one who presided over her administrative hearing. [Record No. 10-1, p. 10] She also alleges error with the ALJ's consideration of the medical opinions in the record. [*Id.*, p. 11] However, the Commissioner contends that the ALJ's decision was proper and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Lawrence.

**I.**

On June 4, 2010, Lawrence applied for a period of disability and disability insurance benefits under Title II of the Act. [*See* Administrative Transcript, p.136; hereafter "Tr."] On

June 9, 2010, she applied for Supplemental Security Income ("SSI") under Title XVI of the Act. [Tr., p. 12] Lawrence alleges a disability beginning May 31, 2010. [*Id.*] Her applications were denied initially and upon reconsideration. [Tr., pp. 45-46] On August 29, 2011, an administrative hearing was held before ALJ Roger L. Reynolds, in Lexington, Kentucky. [Tr., p. 26] Lawrence appeared and testified, represented by attorney Robert Cornett. [*Id.*] Impartial vocational expert ("VE") Jackie Rogers also testified at the hearing. [*Id.*]

Lawrence was thirty-three years old at the time of the ALJ's decision. She has a tenth-grade education, and has previously worked as a cashier, factory worker, and restaurant server. [Record No. 10-1, p. 4; Tr., p. 161] She claims to be disabled due to scoliosis. [Tr., p. 160] After reviewing the record and testimony presented during the administrative hearing, the ALJ concluded that Lawrence suffered from the following severe impairments: "chronic low back pain secondary to degenerative disc disease of the lumbar spine with disc bulges at the L4/L5, L5/S1 levels; increased kyphosis of the spine; depression, not otherwise specified; and borderline intellectual functioning." [Tr., p. 14] Notwithstanding those impairments, the ALJ determined that Lawrence maintained the residual functional capacity ("RFC") to perform light work, with the additional limitations of:

> lifting/carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing, or walking up to 6 hours each but with no prolonged standing or walking in excess of one hour without interruption; no exposure to concentrated vibration or industrial hazards; no climbing of ropes, ladders, or scaffolds; occasional climbing of stairs or ramps; occasional stooping or crouching; requiring entry level work with simple, repetitive, 1-2-3 step procedures; no frequent changes in work routines; no requirement for detailed or complex problem solving, independent planning, or the setting of goals; and preferably in an object-oriented environment with only occasional interaction with the general public.

[Tr., p. 16]

Based on the testimony of VE Rogers, the ALJ determined that Lawrence could not perform past relevant work. [Tr., p. 19] However, after considering the Claimant's age, education, work experience, and RFC, he found that she could perform other work in the national economy, such as inspector, grader or sorter, and bench assembly. [Tr., pp. 20-21] Based on this finding, the ALJ concluded that Lawrence was not disabled. As a result of the ALJ's assessment, she was denied a period of disability, disability insurance benefits, and SSI. [Tr., pp. 55, 56]

**II.**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least

twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform his past work. If she can, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence

as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

Lawrence asserts that ALJ Reynolds committed errors when deciding her claim. First, she argues that the ALJ committed error when Hearing Office Chief ALJ Don Paris signed the hearing decision instead of the hearing officer assigned to her case, ALJ Reynolds. [Record No. 10-1, p. 4] She also argues that the ALJ erred in considering the medical evidence of record, including physicians she contends are "treating physicians." [Record No. 10-1, p. 11]

### A. ALJ Signature

Lawrence contends that the hearing decision in her case was signed by an ALJ other than ALJ Reynolds, who presided over her hearing. She asserts that this procedure violated the Social Security Administration's Hearing, Appeals, and Litigation Law Manual ("HALLEX"), and that

such a violation warrants remand.[1] [Record No. 10-1, p. 10 (citing HALLEX I-2-8-40, 1993 WL 643064)]

The HALLEX manual provides "guiding principles, procedural guidance and information to adjudicators and staff of the Office of Hearings and Appeals." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008) (internal quotation marks omitted). The guidelines establish two procedures where an ALJ conducts a hearing but is unavailable to issue a decision. HALLEX, I-2-8-40, 1993 WL 643064. The first allows for the Hearing Office Chief ALJ to reassign a case where an ALJ who conducted a hearing is unavailable for a substantial amount of time to issue a hearing decision. *Id.* The guidelines also contemplate circumstances where an ALJ has approved a final decision draft but is temporarily unavailable to sign the final decision. *Id.* In such a situation, the Hearing Office Chief ALJ is granted the authority by the ALJ who presided over the hearing to sign the final decision and order as "[Hearing Officer Chief ALJ] John Doe for ALJ Jane Smith." *Id.*

Here, Hearing Office Chief ALJ Paris signed the hearing decision "Don C. Paris for Roger L. Reynolds." [Tr., p. 22] As noted by the Commissioner, this signature indicates that ALJ Paris, as the Hearing Office Chief ALJ, was signing on behalf of ALJ Reynolds. There is no indication that the case was reassigned to ALJ Paris. In fact, the Commissioner affirms that ALJ Paris did not author the decision. [Record No. 11, p. 5] The Court is left to assume that ALJ Reynolds approved the decision and was simply temporarily unavailable to sign it.

---

1 Counsel for the plaintiff, as an aside, makes an allegation that "when this sort of behavior was discovered taking place in another Hearing Office recently, the Commissioner summonsed personnel from the Office of Inspector General and basically shuttered the Hearing Office while conducting a full and extended inquiry which resulted in ouster/retirement of the offending ALJ . . ." [Record No. 10-1, p. 2] However, this assertion is unsupported by the Claimant.

Although the lack of explanation for the signature is less than ideal, it is not reversible error warranting remand. *See Estep v. Astrue*, No. 2:11-0017, 2013 U.S. Dist. LEXIS 7978, at *33 (Jan. 18, 2013) (report and recommendation adopted by *Estep v. Colvin*, 2013 U.S. Dist. LEXIS 73340 (May 22, 2013)) (finding no error where a hearing decision was not signed by a hearing officer, even where there was no explanation for the signature); *see also Creech v. SSA*, Civil No. 13-87-ART, (E.D. Ky. Nov. 11, 2013) (finding no error where one ALJ signed a decision on behalf of another, where the presiding judge authored the opinion).

Additionally, the HALLEX procedures are not binding on this Court, and do not create procedural due process rights. *Dukes v. Comm'r of Soc. Sec.*, No. 1:10-cv-436, 2011 U.S. Dist. LEXIS 105526, at *9 (S.D. Mich. Sept. 19, 2011) ("While the HALLEX procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings."); *see also Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008) (noting that HALLEX is not binding on courts); *Alilovic v. Astrue*, Case No. 1:12CV323, 2012 U.S. Dist. LEXIS 163385, at *20 (N.D. Ohio Nov. 15, 2012) (HALLEX is an "internal guidance tool for use by ALJs and other staff members, is not published in either the Federal Register or the Code of Regulations, and does not have the force of law."); Kendall v. Astrue, No. 09-239-GWU, 2010 WL 1994912, at *4 (E.D. Ky. May 19, 2010) ("HALLEX does not create a procedural due process issue . . ."). Nonetheless, some courts have granted relief where the procedures were not followed and where the plaintiff demonstrates prejudice from the failure to follow the procedures. *See Estep,* 2013 U.S. Dist. LEXIS 7978, at *34-35 (gathering cases).

Even assuming that ALJ Reynolds did not follow the Social Security Administration's internal procedures, and assuming that this alleged error is properly reviewed by this Court, Lawrence has failed to make an allegation of prejudice that is sufficient to warrant remand. She asserts that having a hearing decision authored by ALJ Paris, who did not preside over her hearing, is proof that the hearing decision was not supported by substantial evidence. [Record No. 10-1, p. 2] However, ALJ Paris did not author the decision. [Record No. 11, p. 4] Despite the Claimant's assertions, ALJ Reynolds specifically discussed all of the medical evidence of record, including the consultative examination from September of 2011. [*See* Record No. 10-1, pp. 1-2; Tr., p. 19.] And, as set forth below more fully below, ALJ Reynolds' decision was supported by substantial evidence. Accordingly, the Court rejects Lawrence's argument that remand is necessary because ALJ Paris signed on behalf of ALJ Reynolds.

**B.     Medical Opinions**

Lawrence next argues that the ALJ erred in assigning weight to the medical opinion in the record. She references the opinions of one-time consultative examiner David L. Winkle, M.D., treatment notes from one-time examiner Rebecca Wilshire, M.D., an evaluation by a school psychologist, and an opinion by one-time consultative examiner Andrew Jones, Jr., Ph.D.[2] [Tr., pp. 250-52, 256-59, 275-79, 281-91] She asserts that the ALJ's weighing of the medical

---

2     Under the regulations, a treating source's medical opinion will generally be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. 20 C.F.R. § 404.1527(c)(2); *see also Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992). If the treating source's opinion is not entitled to controlling weight, this does not necessarily mean that the opinion should be completely rejected. The ALJ must always give "good reasons" for accepting or rejecting a medical opinion. 20 C.F.R. § 404.1527(c)(2). However, this requirement is only applicable if the ALJ considers the medical opinion a treating source. As discussed below, one-time evaluations, even with a specialist, do not necessarily constitute medical opinions from a treating source.

evidence violates the Sixth Circuit's opinion in *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013) (finding that an ALJ erred when discounting the opinion of a psychiatrist who had treated the Claimant for almost four years).

As a general rule, the ALJ gives "more weight to the opinion of a source who has examined [a claimant] than to the opinion of a source who has not." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). "[A]n opinion from a medical source who regularly treats the claimant [] is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship." *Gayheart*, 710 F.3d at 375.

### i. Physical Limitations

The ALJ considered the medical evidence of record in determining Lawrence's RFC. [Tr., pp. 18-19] For example, he considered the opinion of consultative examiner Dr. Winkle, who examined Lawrence in July of 2010 and noted that Lawrence had no recent x-rays or examinations for scoliosis.[3] [Tr., p. 250] At that time, she had no physical therapy for her allegedly disabling back condition, took no medication, and had no other treatment for her scoliosis. [*Id.*] Although a back examination revealed a slight tenderness, Dr. Winkle noted that Lawrence had no evidence of scoliosis, but had some evidence of kyphosis, that is, curvature of the spine, and her range of motion was normal. [Tr., p. 251] Dr. Winkle opined that Lawrence would be impaired with heavy lifting, and that prolonged standing, walking, bending and stopping might present problems. [Tr., p. 252] The ALJ gave some weight to Dr. Winkle's opinion, noting that it was generally consistent with Lawrence's complaints, but that it was not

---

3     Dr. Winkle, as a one-time examining consultant, is not a treating source and is therefore not subject to the treating physician rule. *See* 20 C.F.R. § 404.1527.

fully supported by his own treatment notes which indicated mostly normal findings. [Tr., p. 19] Despite some inconsistencies, the ALJ adopted Dr. Winkle's assessment into Lawrence's RFC, limiting heavy lifting, prolonged standing, walking, bending, and stooping. [Tr., p. 16]

In August of 2010, Lawrence was treated as a new patient by Dr. Wilshire, where she reported being turned down for disability and indicated that she was told by her lawyer to see a doctor. [Tr., p. 256] After an examination, Dr. Wilshire opined that Lawrence was positive for scoliosis in her mid-back, but that she had the highest level of muscle strength. [*Id.*] Imaging results were mostly normal, but with a mild to moderate disc bulge, indicating that the disc was touching a nerve, but did not pinch or displace it. [Tr., pp. 258-59] Dr. Wilshire recommended physical therapy. [Tr., p. 258]

Despite Lawrence's arguments to the contrary, the ALJ was not required to give Dr. Wilshire's one-time examination controlling weight because he did not consider her a treating source. *See* 20 CFR §§ 404.1502, 416.902 (a physician qualifies as a treating source if the Claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition"); *see also Gayheart*, 710 F.3d at 375 (giving more weight to a source "who regularly treats the claimant," where the source had treated the claimant for over four years). The record establishes that Dr. Wilshire examined Lawrence only once, and not with the frequency required for allegations of a disabling back condition.[4] *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Smith v. Comm'r of*

---

4      Further, a medical source is not considered "a treating source if [the Claimant's] relationship with the source is not based on [the Claimant's] medical need for treatment or evaluation, but solely on [the] need to obtain a report in support of [the] claim for disability." 20 CFR §§ 404.1502, 416.902. Here, the ALJ considered that Lawrence reported to Dr. Wilshire that she had been turned down for disability and that her lawyer advised her to see a doctor. [Tr., p. 18]

*Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Accordingly, the ALJ did not err in failing to give Dr. Wilshire's one-time treatment notes controlling weight.

Further, the ALJ's functioning findings were consistent with Dr. Wilshire's assessment. ALJ Reynolds considered and incorporated Dr. Wilshire's impressions in his RFC finding that Lawrence's back pain was a severe impairment. [Tr., pp. 14, 18] He also considered that Dr. Wilshire's treatment was conservative. *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (noting that mild treatment history is inconsistent with disabling pain). ALJ Reynolds' discussion of Lawrence's physical condition, including his physical limitations included in her RFC, indicates that most – if not all – of Dr. Wilshire's medical findings were considered and incorporated.

In addition to the medical evidence from Dr. Winkle and Dr. Wilshire, the ALJ also considered the record as a whole, including Lawrence's own reports and testimony. [Tr., pp. 16-17] The ALJ considered that after undergoing physical therapy in September and October 2010, Lawrence reported that much of her back pain was alleviated. [*See* Tr., pp. 265-66, 270-74.] During these sessions, Lawrence indicated that she was able to play in the park with her two-year old daughter and that after medication she reported her pain level at zero.[5] [Tr., p. 272, 273] Lawrence indicated that her condition was well managed with only mild treatment, and she has never been recommended back surgery or a back brace. [Tr., p. 30] During a 2011

---

5   The Claimant also alleges fault with the ALJ's discussion that she was able to care for her young child. [Record No. 10-1, p. 1] At the hearing, Lawrence testified that her daughter was no longer living with her due to a divorce. [Tr., p. 35] However, Lawrence also testified that she and her ex-husband share joint custody of her child, indicating that she does still care for her daughter. [Tr., pp. 34-35] The ALJ's statements that she "cares for her young daughter with help from her ex-husband" are consistent with Lawrence's testimony. [Tr., p. 15]

consultative examination, Lawrence's physical functioning was normal and that there was no evidence that she was coping with disabling pain. [Tr., p. 282] And the ALJ considered all of the medical evidence of record in limiting Lawrence to light work with additional physical restrictions. [Tr., p. 16] Therefore, substantial evidence supports his determination on Lawrence's physical limitations.

### ii. Mental Limitations

Lawrence also alleges error with the ALJ's consideration of her mental limitations, whereby the ALJ determined that Lawrence did not have severe mental impairment that impaired her ability to work. [Tr., pp. 15] The ALJ considered the objective evidence of record and the Claimant's own testimony in making this determination. [*Id*.]

The objective evidence regarding Lawrence's alleged mental impairments is limited to a 1994 report from a school psychologist and a consultative examination, both of which were considered by ALJ Reynolds.[6] In the 1994 report, based on observations while the Claimant was at school, the school psychologist assessed that Lawrence's intellectual abilities were mildly deficient. [Tr., pp. 277-278] She further observed that the Claimant performed significantly better on verbal activities than non-verbal activities, indicative of a potential learning disability. [Tr., pp. 276-277] Her adaptive behaviors were rated as average. [Tr., p. 278]

In a 2011 consultative examination, Andrew Jones, Ph.D., observed that Lawrence's hygiene, responses, information processing time, visual perception, and rapport were within functional limits. [Tr., p. 282] Testing revealed mild to moderately impaired cognitive

---

6  Neither of these sources are entitled to controlling weight, despite Lawrence's assertions to the contrary. 20 CFR §§ 404.1502, 416.902.

functioning, with a full scale IQ of 71 and a Global Assessment Functioning score of 55. [Tr., p. 287] Dr. Jones further opined that Lawrence did not possess the ability to adapt or respond to pressures found in a daily work atmosphere. [Tr., p. 288] ALJ Reynolds considered, but ultimately rejected this assessment, finding that it inconsistent with Lawrence's "complete lack of mental health treatment."[7] [Tr., p. 19]

In addition, the ALJ found convincing that Lawrence herself complained only of physical symptoms that prevented her from working, not mental conditions. [*Id.*] During the hearing, Lawrence testified that she had no trouble functioning while working a wide variety of jobs, such as when she sorted parts in a factory, working as a waitress, even when it was very crowded, or doing food prep in restaurants. [Tr., pp. 33-34] She testified that she has no difficulty getting along with others, she communicates well, performs household chores and can prepare simple food. [Tr., p. 15] Even with those findings, the ALJ allowed the Claimant considerable limitations in her mental functioning and limited to her to simple repetitive tasks, without changes in routine, with no complex problem solving or independent planning or goal-setting. [Tr., p. 16]

Substantial evidence supports ALJ Reynolds' decision to reject the opinion of one-time consultant Dr. Jones, where his opinion was unsupported and even contradicted by the Claimant's own testimony. The Court finds no error with ALJ Reynolds' findings regarding Lawrence's mental limitations on her ability to work.

---

7    Despite the Claimant's assertions, the ALJ specifically discussed the post-hearing consultative evidence by Dr. Jones. [*See* Record No. 10-1, pp. 1-2.]

**IV.**

Lawrence has not established that her impairments, either singularly or in combination, are severe enough to warrant a period of disability, disability insurance benefits, or Social Security Income. The ALJ did not err in applying the internal procedures of the Social Security Administration, nor in his evaluation of the evidence. Viewing the record as a whole, substantial evidence supports ALJ Reynold's determination that Lawrence is not disabled.

Accordingly, it is hereby **ORDERED** as follows:

(1) Plaintiff Cindy Lawrence's Motion for Summary Judgment [Record No. 10] is **DENIED**.

(2) Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 11] is **GRANTED**.

(3) The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 18th day of February, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge